# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 23, 2012 Session

## PATRICK DEVIN CAMP v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. C57,818    Robert H. Montgomery, Jr., Judge**

---

### No. E2012-00198-CCA-R3-PC - Filed June 17, 2013

---

The Petitioner, Patrick Devin Camp, appeals as of right from the Sullivan County Criminal Court's denial of his petition for post-conviction relief. Pursuant to the terms of a negotiated plea agreement, the Petitioner pled guilty to second degree murder, especially aggravated robbery, and especially aggravated kidnapping and received an effective sentence of forty years. On appeal, the Petitioner challenges the voluntariness of his guilty plea and the performance of trial counsel. Specifically, the Petitioner contends that he received the ineffective assistance of counsel, leading to an involuntary plea, because trial counsel (1) failed to adequately communicate with him; (2) failed to inform him of State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), due process issues; (3) failed to inform him of the factors involved in a consecutive sentencing determination; (4) failed to properly investigate the case; (5) failed to assess his mental status; (6) "abandoned" the Petitioner's request to withdraw the plea; and (7) "never intended to fully represent [the Petitioner]." Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Kenneth D. Hale, Bristol, Tennessee (on appeal); and Lynn Dougherty (at post-conviction hearing), Bristol, Tennessee, for the appellant, Patrick Devin Camp.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; and Barry P. Staubus, District Attorney General; for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

The Petitioner was originally charged with first degree premeditated murder, first degree felony murder, especially aggravated robbery, and especially aggravated kidnapping. On June 5, 2009, the Petitioner pled guilty to two counts of second degree murder, which were merged, and to singular counts of especially aggravated robbery and especially aggravated kidnapping. In exchange for his plea, he received concurrent sentences on all counts, resulting in a total effective sentence of forty years at 100% in the Department of Correction.

Guilty Plea Submission Hearing. At the plea submission hearing, the Petitioner confirmed that his signature appeared on the plea agreement, that trial counsel reviewed the agreement with him, and that he understood its contents. The Petitioner stated that he obtained his General Equivalency Diploma (GED). He also confirmed that trial counsel had explained the various elements of the offenses and corresponding ranges of punishment to him.

The Petitioner stated that he understood the plea called for an out-of-range sentence and that he was agreeing to a Range II sentence in order to avoid life in prison. Additionally, the Petitioner confirmed that trial counsel had explained to him that, if convicted at trial, he faced the possibility of consecutive sentences. The trial court also confirmed with the Petitioner that his sentence required 100% service, meaning that there was minimal parole eligibility.

The Petitioner said that he was not under the influence of any alcohol or drugs at the time of the hearing. The trial court then advised the Petitioner of his right to a jury trial; that his convictions could be used to increase or enhance his punishment in future cases; of his right to confront and cross-examine the witnesses against him; of his right to testify in his defense; his right to subpoena witnesses in his defense; of his right to an appeal; and of his right to an attorney at all stages in the proceedings. The Petitioner stated that he understood those rights. The Petitioner affirmed that no one had threatened him or promised him anything in exchange for his plea.

The Petitioner stated that he was pleading guilty because he was in fact guilty of these crimes. The State then summarized the proof that it would have presented had the Petitioner's case gone to trial:

> [T]he State's proof would be that this offense occurred on April the 20th, 2008. And it occurred at Holston View Apartments located in Kingsport, Sullivan County, Tennessee.

And Detective David Cole of the Kingsport Police Department was assigned to the case. And he went to the scene. It was determined that the victim in this case, Derrick Keesy, had passed away.

If there had been a trial in this case, the forensic pathologist, Dr. Campbell, would have testified that . . . the victim's death was a result of homicidal asphyxiation, and in addition to that he had other injuries.

And the State's proof would be that of Jessica Thompson, who was the girlfriend of the victim. And her testimony would have been that she was arriving at the apartment on the 20th, around 7:30 p.m. And when she got there she saw a Ford Explorer automobile with three individuals which were later identified as Mr. Ashton Phillip, Mr. Aldeen Bowman, and the [Petitioner] . . . .

. . . [S]he would testify that she had been to Ashton Phillip's residence with the victim at Brandy Mill Apartments in Kingsport. She said that there had been a discussion in which defendants were present where . . . the victim had had a stash of money in his apartment from some drug transactions. And that also there . . . these individuals had been at the Holiday Inn prior to this event, and it was video taped, which would be introduced into evidence.

The automobile — the Explorer automobile was found at a location, abandoned, essentially. And it was determined that the owner of that vehicle was Ashton Phillip's mother.

We also determined that the defendants had purchased a Thunderbird automobile for cash and had . . . fled from the state. That vehicle was recovered, and found receipts, maps, other things that would corroborate that they had cash money, and they spent those funds, and they were in that automobile together.

In addition, when they returned [the Petitioner] was arrested. He was [M]irandized. And he voluntarily gave a statement where he admitted that he and the other two individuals, co-defendants that previously pled, were in the apartment of the . . . victim. And they took money from him forcibly, in that Mr. Ashton Phillip put a cord around his neck. That Mr. Bowman was hitting the victim inside. [The Petitioner] got closer, and he stated that the victim grabbed him, and as a result he took a skillet, hit him in the head. And then they exited the vehicle [sic] in the Explorer.

The trial court thereafter asked the Petitioner if he was satisfied with trial counsel's representation, and the Petitioner replied affirmatively. When asked if there was anything trial counsel had not done that the Petitioner had asked of him to do, the Petitioner replied that there was not.

-3-

Post-Conviction Proceedings. Thereafter, the Petitioner filed a timely petition for post-conviction relief. The Petitioner claimed that he did not voluntarily plead guilty and that trial counsel was ineffective. Specifically, he contended that trial counsel: (1) failed to provide him with sufficient time to review the plea agreement; (2) pressured him into signing the agreement and did not inform him that he could request additional time to consider his plea; (3) failed to investigate the case and interview potential witnesses; (4) failed to develop the mental state of the Petitioner at the time he made the statement to authorities, including filing a motion to suppress that statement; (5) failed to discuss mitigating factors with the Petitioner; and (6) failed to file a motion to withdraw the plea, as the Petitioner requested. Counsel was appointed to represent the Petitioner, and an amended petition was filed. The amended petition incorporated by reference the allegations in the pro se petition and added the following additional allegations: trial counsel (1) failed to conduct a preliminary hearing; and (2) failed to inform the Petitioner of the likelihood that a separate kidnapping conviction might not survive principles of due process as announced in Dixon. The State filed a response denying the Petitioner's allegations.

At the post-conviction hearing that followed, Detective David Cole of the Kingsport Police Department was the first to testify. Det. Cole was responsible for taking the Petitioner's confession. Det. Cole stated that he discussed the circumstances surrounding the Petitioner's statement with trial counsel at the courthouse for approximately ten to fifteen minutes.

On cross-examination, Det. Cole confirmed that the Petitioner's statement was voluntarily and knowingly given and that he told trial counsel such. Moreover, he informed trial counsel that the Petitioner's mother was present during the statement. However, Det. Cole could not recall if trial counsel asked about the Petitioner's demeanor during the statement or if the Petitioner was under duress from any of his co-defendants.

Trial counsel was next to testify and began by recounting his educational and professional background. Trial counsel confirmed that in May 2008, he was retained by the Petitioner's mother to represent the Petitioner for approximately $4,000.00. She paid half of the retainer up front, and trial counsel opined that she appeared to be "having financial difficulties" at that time. Before accepting the representation, trial counsel met with the district attorney to be assigned the Petitioner's case, who indicated that he "would be willing to discuss and negotiate a settlement." Trial counsel relayed this information to the Petitioner's mother before accepting the representation. Also prior to being retained, trial counsel met with the Petitioner in the Greene County Jail. According to trial counsel, it was always their "goal to obtain a negotiated settlement in this case." Trial counsel agreed that, if they were unable to obtain a favorable plea and proceeded with a trial, then he was "going to be stuck for potentially hundreds of thousand of dollars in hours[.]" Trial counsel testified

-4-

that, once retained, he had several additional meetings with the Petitioner during courtroom proceedings. For instance, trial counsel met with the Petitioner "for a considerable length of time" prior to the scheduled preliminary hearing. He also corresponded with the Petitioner frequently.

At the time representation commenced, the Petitioner was eighteen years of age, and the Petitioner indicated that he had obtained his GED. According to trial counsel, the Petitioner's future plans included attending college or joining the military. When asked to convey his initial assessment of the Petitioner, trial counsel responded,

> He appeared to me as someone who was a classic example of running around with the wrong crowd and being at the wrong place at the wrong time. He was very polite, well spoken, seemed to have a very good head on his shoulders . . . .
>
> He was extremely naive with regard to his expectations of his case. . . . [B]ased on correspondence I received from him[,] I felt as if he did not understand the severity of what he was facing in relation to these charges.

Trial counsel received a letter from the Petitioner about the Petitioner's "proposed plan to extricate himself from this situation" by working undercover in drug transactions. Despite the naivety of the letter, trial counsel still opined that the Petitioner was "very bright, articulate" and "well spoken." According to trial counsel, "there was simply nothing" which would have led trial counsel "to think that [the Petitioner] would need a mental evaluation or that he was suffering from emotional difficulties."

Trial counsel confirmed that he waived the preliminary hearing in the Petitioner's case and explained that he did so in an effort to receive discovery information and discuss plea deals sooner. When asked why waiver of the preliminary hearing would expedite the process, trial counsel stated that, in Sullivan County, a different district attorney handles a case once it is transferred from sessions court to criminal court and, by getting it transferred faster, that district attorney in criminal court would have access to the relevant case information and be in a position to negotiate a plea deal. Trial counsel agreed that, if a preliminary hearing would have been conducted, Det. Cole would have been the primary witness, which would have allowed the defense an opportunity to cross-examine Det. Cole about the statement. Although trial counsel never filed a motion for discovery, all of the discovery was voluntarily provided by the State according to trial counsel. Trial counsel opined that "there was nothing to be gained by way of a preliminary hearing[.]"

Trial counsel confirmed that he did have a ten-to-fifteen minute meeting with Det. Cole at the courthouse to discuss the Petitioner's statement. According to trial counsel, he also had additional conversations with Det. Cole concerning the Petitioner's confession, which occurred during breaks in an unrelated jury trial. Not believing there to be any legal basis to support a motion to suppress the Petitioner's statement, trial counsel never filed such a motion. He formulated this opinion after speaking with the Petitioner, the Petitioner's mother, and Det. Cole and after reviewing the <u>Miranda</u> waiver and the statement itself.

During meetings with the Petitioner, trial counsel and the Petitioner discussed the following:

> The manner in which we envisioned the case proceeding. We discussed his confession. We discussed the facts of the offense. He was very concerned as to whether or not he would have been caught had he not given his confession and we went over the facts that were relayed to me at that point in time as far as what the police knew, when they knew it, that kind of thing.

When asked if they discussed possible defenses, trial counsel replied that they solely discussed a duress defense because the Petitioner had confessed, so some other defense, like "some other guy did it[,]" was not going to work. Trial counsel asked Det. Cole if the Petitioner "gave him any information that . . . would provide a basis for that defense" during his confession, but Det. Cole indicated that the Petitioner did not.

Trial counsel said that they also discussed bond matters because the Petitioner "wanted out of jail[,]" so trial counsel filed a motion to reduce the Petitioner's bond. At the bond hearing that followed, both the Petitioner and his mother testified. The trial court denied any reduction in bond for the Petitioner. The Petitioner did not understand why his request was denied, and trial counsel explained to him that it was due to flight following the murder and his subsequent confession. Additionally, trial counsel learned at the bond hearing that the Petitioner had adult convictions for assault and criminal trespass.

Trial counsel was asked if the Petitioner provided him with the names of any "fact witnesses to the event[,]" and he said that the only witnesses provided to him "were witnesses who [the Petitioner] indicated would testify that he did not know the victim, that this was not something that he had planned beforehand." Specifically, trial counsel knew of the Petitioner's girlfriend, who "would testify that they were hanging out that day and had plans to hang out that day and then [the Petitioner] changed those plans to go to the Holiday Inn with the co-defendants and certainly had no knowledge beforehand of this event." Trial counsel stated that he interviewed the Petitioner's mother and Det. Cole but never the Petitioner's girlfriend.

-6-

Trial counsel confirmed that, at one point during the representation, he did not meet with the Petitioner for a period of six months. However, during that time, trial counsel spoke with the Petitioner's mother "every couple of days[,]" and she indicated that she was speaking with the Petitioner often, relaying "information back and forth." Trial counsel stated that he "communicated extensively with [the Petitioner's] mother." Morever, according to trial counsel, "there was simply at that point in time no need to communicate" because "[t]here was no imminent trial date." Also by that time, trial counsel had received and reviewed all of the discovery materials. Trial counsel "released" the discovery materials to the Petitioner's mother at the Petitioner's request; doing so because the Petitioner "was concerned about the paperwork being found in his cell which would indicate that he was in essence a snitch, that he had given a statement, a confession." According to trial counsel, the discovery materials "corroborated everything [the Petitioner] had told [him]." In later meetings with the Petitioner, they discussed the discovery materials, and the Petitioner evidenced an understanding of those materials.

The initial offer from the State was fifty years received on May 6, 2009. After discussing the offer with the Petitioner, that offer was rejected. According to trial counsel, "had the offer made remained 50 years we would have got a trial date and we'd have had ourselves a trial." Nonetheless, trial counsel did not commence trial preparations. On June 1st, the district attorney called trial counsel and offered forty years on all counts, with all counts running concurrently. The agreement required all three co-defendants to accept the deal, which the other two had already done. Courtroom proceedings were previously scheduled for June 5th, and trial counsel did not meet with or discuss the plea deal with the Petitioner prior to that scheduled appearance. However, according to trial counsel, he immediately, upon receipt of the offer, relayed it to the Petitioner's mother.

When trial counsel met with the Petitioner on June 5th prior to the scheduled hearing, the Petitioner was aware of the forty-year offer. They met for "over an hour, probably close to two[,]" before the Petitioner entered his plea that day. Trial counsel advised the Petitioner that it "was in his best interest based upon the facts and the confession that he gave[,] and based upon certain findings . . . announced in open court during the bond hearing[,]" to accept the offer.

When asked "what else" he discussed with the Petitioner prior to entry of the plea, trial counsel said,

> We discussed the likely outcome of a trial, the possibility of consecutive sentencing versus the concurrent sentencing that was called for in the plea agreement. We actually, you know, did the math and said okay, 40 years at 100 percent which is really 85 percent, you know, you're going to come up for

parole at this point in time at this age and, you know, did the math with regard to 52 years and then 52 plus 25 and 52 plus 50. I mean we did all of that. We debated the advantages and disadvantages of a trial . . . .

Stated another way, if convicted at trial, the Petitioner faced a life sentence for a first degree murder conviction with the possibility of consecutive sentences on the other counts. Trial counsel stated that he reviewed with the Petitioner the relevant factors to be considered by a trial judge in a consecutive sentencing determination. Trial counsel told the Petitioner that, based upon his experience with the trial judge in the Petitioner's case, consecutive sentencing "was a definite possibility, that the judge had reviewed his criminal record at the bond hearing and found it to be extensive based upon his age. The judge had looked at a lot of factors at the bond hearing that he would have looked at in consecutive sentencing."

Trial counsel testified that they also discussed the elements of the offenses and what the State would have had to prove if they proceeded to trial; however, trial counsel did not discuss the due process principles outlined in Dixon with the Petitioner. Trial counsel acknowledged that, in certain circumstances, separate convictions for kidnapping and robbery violated principles of due process. However trial counsel opined that, based upon the facts as conveyed to him, he did not believe the principles of Anthony and Dixon applied to the Petitioner's case.

Trial counsel was then asked when, following entry of the Petitioner's plea, his duties of representation terminated. Trial counsel said that his duties to the Petitioner terminated when the "judgment bec[ame] final" or "30 days from the entry of judgment absent the entry of a Motion for New Trial or another motion." Trial counsel further agreed that representation continued if the Petitioner indicated a desire to attack his plea. However, trial counsel testified that no one indicated to trial counsel, within the thirty-day time limit, that the Petitioner wished to withdraw his plea. The Petitioner's mother had informed trial counsel that the Petitioner was having "second thoughts" and that the Petitioner felt pressured by trial counsel into entering a plea. In response, trial counsel wrote a letter to the Petitioner's mother dated June 19, 2009. In the letter, trial counsel first indicated that he had "not heard anything more . . . regarding that issue." Trial counsel then explained that, if the Petitioner did intend to pursue withdrawal of this plea, he would need to hire another lawyer or file a motion pro se within the thirty-day time period because trial counsel was "ethically prohibited from doing that." After sending the letter and still within the thirty-day time period, trial counsel had a telephone conversation with the Petitioner's mother, and she never mentioned withdrawing the guilty plea. Trial counsel admitted that he did not go meet with the Petitioner to discuss withdrawing the plea and took no further action on the Petitioner's behalf. Trial counsel confirmed that to preserve a client's right to a motion to withdraw and to an appeal, the proper procedure would be to file a motion to withdraw and then move to

withdraw from representing that client. Trial counsel insisted that he was never actually instructed to file a motion to withdraw the plea within the thirty-day time period; it was not until later that trial counsel learned of an actual desire to withdraw the plea.

Also according to trial counsel, the "plea window was for June 5th[,]" and a continuance was not possible. He asked the district attorney for more time, but that request was denied.

On cross-examination by the State, trial counsel agreed that the Petitioner evidenced an understanding of the criminal justice system in his correspondence, making references to alternative sentencing and release eligibility. In trial counsel's initial correspondence with the Petitioner, he outlined the elements of the offenses and possible sentences correlated with each offense. Trial counsel believed the Petitioner understood this information. Upon receipt of the Petitioner's letter in which the Petitioner offered to perform undercover drug operations in exchange for leniency, trial counsel discussed this proposal with the district attorney, but that offer was declined.

Trial counsel confirmed that the co-defendants had preliminary hearings and that he received a copy of those transcripts, providing a copy to the Petitioner's mother. At those hearings, the State called two witnesses to testify, one a witness to the Petitioner's presence at the victim's apartment before the murder, and the other was the victim's girlfriend. Trial counsel did not believe that those two witnesses would have been called at the Petitioner's preliminary hearing and, moreover, their testimony corroborated "everything that [the Petitioner] had told" trial counsel. The State also provided trial counsel with copies of all of the witnesses' statements. According to trial counsel, "[t]he facts of this case were not going to be disputed by [the Petitioner]." In trial counsel's opinion, the case against the Petitioner was strong.

The Petitioner never said to trial counsel that Det. Cole coerced him into making a confession. Likewise, the Petitioner never told trial counsel that he did not understand what he was doing at the time he made the statement. The Petitioner did tell trial counsel that he was very emotional and upset at the time of the statement, which was why he wanted his mother in the room. Det. Cole permitted the Petitioner's mother to be present. According to trial counsel, both the Petitioner and his mother "appreciated the manner in which Detective Cole conducted the investigation and treated [the Petitioner.]" The Petitioner never denied the contents of his statement.

Trial counsel testified that the Petitioner desired to enter the plea because, by accepting the forty-year sentence, the Petitioner would not spend the rest of his life in prison. Trial counsel affirmed that he did not pressure the Petitioner into accepting the plea and told

the Petitioner that it was his choice whether to enter a plea. At the time of the plea, the Petitioner did not indicate any dissatisfaction with trial counsel's representation. Moreover, the Petitioner did not appear to be under the influence of alcohol or drugs during trial counsel's representation of him and never conveyed that he was suffering from any type of mental condition.

Trial counsel also received and reviewed the video from the Holiday Inn showing all of the co-defendants together before the murder. According to trial counsel, nothing in the video indicated that the Petitioner was under any duress or coercion. While trial counsel believed the Petitioner that he was in fear of his co-defendants, trial counsel did not believe a duress defense would have been successful at trial. In fact, the co-defendants' "defense was going to be that [the Petitioner] was the leader."

Regarding the due process principles espoused in Dixon, trial counsel stated that "from a practical standpoint with the offer it didn't matter" because "[e]verything was concurrent . . . ." Moreover, trial counsel opined that Dixon would likely not have applied based upon the facts of this case and that separate convictions would have been allowed.

Finally, the Petitioner testified regarding his allegations for post-conviction relief. First, he claimed that trial counsel met with him for approximately a total of three hours, not twelve as trial counsel claimed. Other than the initial meeting in the county jail, all meetings occurred during courtroom appearances. The Petitioner asserted that he originally told trial counsel he wanted a trial, but trial counsel told him that he was "confident" that they could get a fifteen-year offer.

The Petitioner testified that he discussed a duress defense with trial counsel and that the Petitioner wanted to file a motion to suppress his statement. Trial counsel told the Petitioner that a motion to suppress was pointless because "none of [the Petitioner's] rights were [abridged]." Moreover, the Petitioner agreed that he told trial counsel that the statement was true and accurate.

The Petitioner claimed that trial counsel never told him of the fifty-year offer. The Petitioner confirmed that his mother told him about the forty-year offer approximately two days before the June 5th hearing. According to the Petitioner, he replied to his mother, "it's too much time. I can't take that."

On the day of the hearing, according to the Petitioner, he spoke with trial counsel for about an hour before he entered his plea. When the Petitioner told trial counsel he did not want to take the forty years, trial counsel gave the following advice to the Petitioner and his mother:

-10-

Detective Cole can come testify on my behalf being they was [sic] the ones that was [sic] present when the statement was given and he told that my duress defense would be at a disadvantage. He told me that if I was to go to trial . . . I would be convicted of all three of my charges. I was at 100 years and it would all be ran consecutive.

Trial counsel also told the Petitioner that he had just recently lost a first degree murder trial. Additionally, trial counsel said that a continuance for more time to think about the plea would not be possible; the Petitioner was unaware that June 5th was the "drop-dead day[.]"

The Petitioner agreed that trial counsel never discussed with him whether he could be convicted of separate charges for kidnapping and robbery under principles of due process. The Petitioner testified that, if he had been so informed, he would not have pled guilty. According to the Petitioner, during their discussions, trial counsel focused on the fact that the Petitioner would be convicted of all charges if he went to trial and would get one hundred years in prison. The Petitioner stated that trial counsel only discussed consecutive sentencing with him, that he did not discuss any possibility of concurrent sentencing. Moreover, according to the Petitioner, trial counsel never informed him of the factors to be considered in a consecutive versus concurrent sentencing determination. Had trial counsel talked with the Petitioner about the possibility of concurrent sentencing, the Petitioner asserted he would not have pled guilty and would have proceeded to trial. According to the Petitioner, trial counsel "guaranteed" him that he would get one hundred years if he was convicted by a jury.

The Petitioner testified that, following his plea, he told his mother to inform trial counsel of his desire to withdraw his plea. The Petitioner then confirmed that he received trial counsel's June 19, 2009 letter, wherein trial counsel stated "he couldn't be [the Petitioner's] lawyer no more [sic]." The Petitioner claimed he was unable to take any further action without a lawyer. When asked if he understood the potential time he faced if permitted to withdraw his plea, the Petitioner stated, "My understanding is if my plea is overturned from a result of this hearing that I face 18 more years . . . [a]t a minimum[.]" At the time of entry of the plea, the Petitioner honestly believed that trial counsel "had done everything that [he] thought he could do or whatever" and that it was not until later that he became dissatisfied with trial counsel's representation. The Petitioner opined on cross-examination that trial counsel "[d]uly influenced" him against his will to enter a plea.

Upon examination by the court, the Petitioner stated that he "never understood" the difference between premeditated and felony murder. Furthermore, the Petitioner claimed that he never received the discovery materials. The Petitioner confirmed that he and his mother were communicating on a regular basis and that she would relay the information given to her by trial counsel.

-11-

The Petitioner stated that he understood trial counsel's letter informing him that he could not file a motion to withdraw the plea on the Petitioner's behalf and that he understood the concepts of proceeding pro se or getting a lawyer appointed to his case. However, he then claimed that he did not know he could send something to the judge personally, that he did not have his mother hire a new lawyer because she had exhausted all of her funds, and that he "didn't know no [sic] attorney that could do it." The Petitioner recalled that he had an appointed lawyer in juvenile court.

The Petitioner was asked by the court his reasons for wanting to withdraw his plea, and he responded as follows:

> That I didn't want to plea and that [trial counsel] had told me all the negative stuff but before -- which was positive like Detective Cole and mother being at the gathering of the statement and how my demeanor was then and how all that changed on the day of my plea. Like before my plea date, it was . . . they could come and testify but on the day of my plea he told [me] that they couldn't come testify. . . . [A] lot of my defense was built around my demeanor or the statement, when I gave my statement and he was telling me that they could come and testify first but then at the day of my plea he told me that they couldn't come testify on my behalf.

He claimed he was "on suicide watch" in the county jail at the time he gave his confession. While he again acknowledged that the statement was true, he claimed that "it wasn't voluntary" because he did not want to talk with Det. Cole. He said his mother encouraged him to speak with Det. Cole.

Trial counsel was called in rebuttal and testified that he never influenced the Petitioner to plead guilty, he only gave him advice and discussed his options. Moreover, he reiterated that he never "guaranteed" the Petitioner he would get one hundred years following jury trial convictions. Trial counsel again confirmed that during his discussions with the Petitioner, the Petitioner evidenced a knowledge of the discovery materials. For instance, the Petitioner asked specifically about the cause of death listed in the autopsy report. Trial counsel also confirmed that he did tell the Petitioner about his loss in another jury trial for murder and stated that this "was done in the context of, . . . 'You have a version of events but there's no guarantee that the jury is going to accept your version.'"

After hearing the evidence presented, the post-conviction court denied relief by written order filed on December 30, 2011. This appeal followed.

## ANALYSIS

On appeal, the Petitioner contends that his plea was not knowingly and voluntarily entered and that trial counsel failed to provide the effective assistance of counsel guaranteed him by the United States and Tennessee constitutions at trial. Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S .W.2d 337 (Tenn. 1977). See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Because the plea must represent a voluntary and intelligent choice among the alternatives available, there are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. Id. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and

the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the petitioner must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has also been applied to the right to counsel under Article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. at 58. The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Strickland, 466 U.S. at 687 (1984); Burns, 6 S.W.3d at 461; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

As noted, the Petitioner finds fault with trial counsel's representation of him and contends that the record establishes that his plea was not knowingly and voluntarily entered. Specifically, the Petitioner contends that he received the ineffective assistance of counsel, because trial counsel (1) "failed to maintain communication"; (2) "failed to address Dixon due process issues"; (3) "failed to adequately inform [the Petitioner] of the factors involving consecutive [versus] concurrent sentencing"; (4) "failed to properly investigate the case"; (5) "failed to assess the mental status of [the Petitioner]"; (6) "abandoned [the Petitioner's] request to withdraw the plea"; and (7) "never intended to fully represent [the Petitioner]." Finally, he argues that due to trial counsel's inadequate investigation of and preparation for the case, coupled with counsel's failure to communicate with the Petitioner, his guilty plea was involuntarily entered.

*A. Communication, Investigation, and "Full Representation"*[1]

Addressing the issues of trial counsel's investigation, communication, and representation, the post-conviction court ruled in its written order as follows:

> In this case, the Court finds that [trial] defense counsel . . . was an experienced lawyer. [Trial counsel] had served as a prosecutor and as a criminal defense attorney for almost 10 years and had represented two separate

---

[1] Because the post-conviction court dealt with many of the Petitioner's issues jointly, we will likewise do the same.

defendants in murder cases, one of which involved a jury trial, before accepting employment in this case.

The Court finds that [trial counsel] initially met with the petitioner, the petitioner's mother, and Detective Cole regarding the circumstances surrounding the taking of petitioner's confession. [Trial counsel] filed for and subsequently presented a motion to reduce bond and, after that request was denied, [trial counsel] reviewed the results of that hearing with petitioner.

The Court finds that while [trial counsel] did not file a motion of discovery, he obtained and reviewed the complete discovery which, though not required by the rules, included statements of witnesses. [Trial counsel] forwarded the discovery to petitioner's mother at petitioner's request. [Trial counsel] discussed the case on a regular basis with the assistant district attorney assigned to the case. [Trial counsel] discussed the case on a regular basis with petitioner's mother who in turn would discuss the case with petitioner. [Trial counsel] met with petitioner and discussed the case on numerous occasions at the time that petitioner was in Sullivan County for court hearings. [Trial counsel] recorded the time that he spent on the case and also corresponded in writing with petitioner and with petitioner's mother with regard to the case.

The Court finds that the petitioner has failed to show by clear and convincing evidence that [trial counsel's] action in his representation were deficient during the time leading up to the plea in this case.

While the evidence, on its face, shows that [trial counsel's] actions were not deficient, petitioner asks [this] Court to find that the actual advice that [trial counsel] gave to petitioner was deficient. As a result of that deficient advice, the petitioner claims that instead of feeling like he was coerced into accepting the 40-year sentence at 85%, he would have gone to trial. Petitioner claims that the coercion was a result of [trial counsel's] advising him that if he went to trial [he] would receive a total sentence of 102 years.

Petitioner's counsel in his questioning of [trial counsel] at the post-conviction hearing appears to also suggest that perhaps the relatively low retainer fee paid in the case resulted in [trial counsel] continually advising the petitioner of the possibility of receiving over 100 years at trial rather than what petitioner's counsel says was the more realistic result of life imprisonment which 52 years must be served before parole eligibility.

The retainer fee for the employment contract between [trial counsel] and petitioner's mother was low for a first degree murder case. The contract was for hourly billing and required an initial payment of $2,000 toward an agreed $4,000 retainer with the balance of the retainer being paid at $200 [a] month. If [trial counsel] exhausted the initial retainer, then any unpaid balance

would be billed. At the time of the plea, petitioner's mother was behind in payments.

    While the petitioner complains that he always wanted to go to trial, the Court finds that petitioner was, on the contrary, always willing to consider a plea. [Trial counsel] testified that, based on his conversations with petitioner and his mother, it was [trial counsel's] goal to work toward getting the best plea offer possible, but to go to trial if there was not an acceptable agreement. Early on, [trial counsel] testified that he confirmed with the district attorney's office that there was the possibility of plea negotiations to something other than a life sentence for first degree murder and reported this to petitioner and his mother.

    The Court accredits [trial counsel's] testimony that plea negotiations were always a part of the representation of petitioner. In fact, petitioner sent [trial counsel] a letter in which petitioner naively offered to provide information about drug activity in East Tennessee in return for release from custody and a sentence consideration. Petitioner also testified that in discussing his case with [trial counsel] early in the representation, [trial counsel] told him that he could obtain a 15-year sentence for petitioner. When the initial offer from the State was for 50 years at 100% that offer was immediately rejected. Petitioner also testified that on the day of the plea he asked [trial counsel] if he could have more time to consider the offer. Obviously, the petitioner was always willing to discuss a plea offer and certainly did not reject the 40-year offer out of hand and was actively considering the state's offer when he asked for more time. The Court finds that the decision to enter in to plea negotiations with the district attorney general was authorized by petitioner and was not done by [trial counsel] to avoid the expense of a trial.

We agree with the post-conviction court that the Petitioner has failed to show ineffective assistance on these issues. However, we note that, on appeal, several of these issues are presented slightly differently than they were in the post-conviction court.

Regarding the allegation that trial counsel "failed to maintain communication" with the Petitioner, on appeal, the Petitioner argues that, despite the seriousness of the charges and possible sentencing exposure, trial counsel "demonstrated very limited contact with his client[.]" According to the Petitioner, trial counsel "did not sufficiently explore defenses and discuss those defenses" with the Petitioner, and there was a "total lack of trial preparation." The Petitioner also notes that much of the "limited communication" was with the Petitioner's mother, not the Petitioner, raising "serious questions about the ethical issue of the attorney/client privilege[.]"

The Petitioner also argues that trial counsel never "intended to fully represent [the Petitioner.]" The Petitioner explains that trial counsel "did not intend to put forth a significant effort to adequately represent" the Petitioner, as evidenced by the "ridiculously low fee charged" for the representation, coupled with the fact of the Petitioner's mother's "apparent inability" to even pay all of the retainer, "much less any additional billed amounts." According to the Petitioner, it is clear that trial counsel "intended to do no more than negotiate the easiest and quickest deal with the State that was possible without putting forth the effort necessary to test the State's case."

Trial counsel testified that, prior to accepting the representation, he met with the Petitioner in the county jail to discuss the case. Trial counsel also met with the district attorney general assigned to the Petitioner's case, who indicated that he would be willing to entertain plea discussions. Trial counsel testified to having several additional meetings with the Petitioner at courtroom proceedings and corresponded with the Petitioner often. Trial counsel also stated that he spoke with the Petitioner's mother frequently, and she relayed information to the Petitioner.

Although trial counsel did not file a motion for discovery, he received all of those materials from the State and "released" them to the Petitioner's mother who forwarded them to the Petitioner. According to trial counsel, the Petitioner evidenced a knowledge of those materials at subsequent meetings. Trial counsel did file a motion to reduce the Petitioner's bond, which was denied after a hearing.

Trial counsel said that he reviewed the facts of the case with the Petitioner, including possible defense strategies, the elements of the offenses, the penalties he was facing, and the possibility of proceeding to trial. Trial counsel also spoke with Det. Cole regarding the circumstances surrounding the Petitioner's statement, and he obtained and reviewed the transcripts of the co-defendants' preliminary hearings. In his legal opinion, trial counsel did not believe there was any basis to file a motion to suppress the statement. Regarding possible defenses at trial, trial counsel said that they would have had to rely solely on a duress defense; however, trial counsel opined that this defense would likely have been unsuccessful.

Trial counsel testified that it was always their "goal to obtain a negotiated settlement in this case." Trial counsel said that, despite the small retainer paid, he would have proceeded to trial if they were unable to reach a settlement. According to trial counsel, the Petitioner was aware of the forty-year offer when they spoke on June 5, 2009, prior to entry of his plea. Trial counsel said this meeting lasted "over an hour, probably close to two[,]" during which trial counsel advised the Petitioner on whether to plead. The post-conviction court found that the Petitioner was "always willing to discuss a plea offer . . . ." We agree with the post-conviction court that the Petitioner has failed to show that trial counsel failed

to represent him fully, conducting adequate investigation and engaging in sufficient communication.

In a related argument, the Petitioner claims, on appeal, that trial counsel failed to conduct proper investigation, including interviewing witnesses. Specifically, the Petitioner notes that trial counsel did not interview his girlfriend "who purportedly possessed information related to his state of mind immediately prior to the incident[,]" which "information would go to the issue of premeditation as it related to the first degree murder charge." Moreover, trial counsel failed to assess the "respective strengths and weakness [sic] of the State's case as well as" possible defenses.

This court has long held that when a petitioner contends that trial counsel failed to call a known witness in support of the defense, the witness "should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "[T]his is the only way the petitioner can establish that . . . failure to . . . call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. The Petitioner failed to present his girlfriend at the post-conviction hearing; therefore, the Petitioner has failed to establish by clear and convincing evidence that trial counsel was ineffective for failing to investigate and call this witness at trial.

Furthermore, trial counsel testified that he was not provided with any "fact witnesses to the event," the only witnesses provided "were witnesses who [the Petitioner] indicated would testify that he did not know the victim, that this was not something that he had planned beforehand." Trial counsel agreed that he knew of the Petitioner's girlfriend, who "would testify that they were hanging out that day and had plans to hang out that day and then [the Petitioner] changed those plans to go to the Holiday Inn with the co-defendants and certainly had no knowledge beforehand of this event." The Petitioner asserts that his information would have been relevant to the issue of premeditation; however, this assertion fails to take into account that the Petitioner was also charged with felony murder, not requiring a finding of premeditation, only an intent to commit the underlying felony. Moreover, the Petitioner's girlfriend was not present during the commission of these offenses and, therefore, could provide little information on the facts surrounding these offenses. The Petitioner has failed to establish ineffective assistance in this regard.

*B. Consecutive Sentencing and Due Process Principles*

On appeal, the Petitioner argues that "trial counsel failed to address Dixon due process issues" with him. Specifically, he asserts that trial counsel should have discussed the Dixon factors with him and that, had this discussion occurred, he would not have pled guilty "since

this had the possibility to eliminate one of the charges[.]" Moreover, the Petitioner contends that the post-conviction court incorrectly analyzed the Dixon[2] factors in its ruling.

The Petitioner also claims on appeal that "trial counsel failed to adequately inform [him] of the factors involving consecutive [versus] concurrent sentencing." Specifically, he asserts that trial counsel did not discuss the seven factors found in Tennessee Code Annotated section 40-35-115(b) for imposing consecutive sentences or discuss the two-prong findings of State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), required for the dangerous offender criterion. According to the Petitioner, because he was not informed of the criteria to be analyzed in such a determination, he "did not fully comprehend the standards to be applied[,]" and had he been fully informed, he would not have pled guilty.

In denying relief on these two issues, the post-conviction court reasoned as follows:

> The petitioner also alleges that [trial counsel's] advice was deficient as he advised petitioner that he would receive consecutive sentencing totaling 102 years if petitioner was convicted as charged at trial. Petitioner also alleges that [trial counsel] never discussed with him the possibility of concurrent sentencing. Petitioner also alleges that [trial counsel] was deficient for never advising petitioner that if petitioner was convicted at trial of both robbery and kidnapping then the kidnapping charge could be found to be incidental to the robbery and any conviction for kidnapping would have been vacated on due

---

[2] In State v. Anthony, our supreme court, citing due process concerns, held that before a separate kidnapping conviction may be sustained, there must be a determination of

> whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony and [was] not, therefore, sufficient to support a separate conviction for kidnapping, or whether it [was] significant enough, in and of itself, to warrant independent prosecution and [was], therefore, sufficient to support such conviction.

817 S.W.2d 299, 306 (Tenn. 1991). Later, in State v. Dixon, our supreme court modified the Anthony court's "essentially incidental" analysis and established a two-prong test for determining whether a separate conviction for kidnapping violates due process. 957 S.W.2d 532, 535 (Tenn. 1997). The first step concerned a determination of whether the movement or confinement was beyond that necessary to commit the accompanying felony. Id. If so, the second step concerned ascertaining whether the additional movement or confinement (1) prevented the victim from summoning help; (2) lessened the appellant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id. Recently, in State v. White, our supreme court expressly overruled Anthony and its progeny, holding that "[t]he separate due process test articulated first in Anthony, and subsequently refined in Dixon . . . , is . . . no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." 362 S.W.3d 559, 578 (Tenn. 2012).

process grounds. The effect of a due process issue would have been to eliminate the possibility of an additional 15 to 25 years of potential consecutive sentencing.

The petitioner contends that had he been advised properly on consecutive sentencing and due process issues involving a robbery and a kidnapping conviction then petitioner would have gone to trial. Petitioner claims that if he knew that he was only facing a possible life sentence if he went to trial, rather than the life plus 50 years that [trial counsel] was advising him that he would receive at trial, then petitioner would have been willing to go trial on his charges.

The Court finds that petitioner has failed to show by clear and convincing evidence that [trial counsel] was deficient in his advice to petitioner on this issue. The Court finds that [trial counsel] correctly stated the law to the petitioner with regard to consecutive sentencing and the possibility that petitioner could be found to be a dangerous offender for the purposes of consecutive sentencing. Any attorney advising a client with regard to a plea offer has an obligation to fully explain the maximum possible outcome that could result from a jury trial so that a defendant can weigh the possible consequences of going to trial vers[u]s the consequences of accepting a plea agreement. While certainly all of petitioner's charges at trial could have been run concurrently by a sentencing judge, the Court finds that there was a basis for the charges to be run consecutively and it was not error for [trial counsel] to advise petitioner of this possibility.

The Court also finds that petitioner has failed to show by clear and convincing evidence that [trial counsel] was deficient, under the facts in this case, for not advising petitioner of due process considerations involving convictions for robbery and kidnapping. [Trial counsel] testified that he did not discuss with petitioner the appellate decisions that have held that a due process violation might occur in some cases when there is a conviction for both kidnapping and robbery arising out of the same incident. While certainly there are case decisions where a kidnapping decision has been vacated when the kidnapping was found to be incidental to another charge such as robbery, there have also been decisions in which both convictions have been allowed to stand. The case decisions are always fact specific.

[Trial counsel] testified that, after reviewing petitioner's statement, it was [trial counsel's] opinion that both charges would stand and that the kidnapping was not incidental to the robbery.

At the guilty plea, the Court found from the stipulation of facts that the convictions for both especially aggravated robbery and kidnapping could both stand. Further, the Court finds from a review of the petitioner's statement that

the kidnapping in question was clearly beyond that needed to consummate the robbery. The petitioner in his statement admitted to binding the victim's hands, hitting the victim on the head with a pan and covering the victim's mouth with duct tape and leaving the victim in that position when they left. These acts prevented the victim from summoning help. These acts also lessened the risk of detection of the robbery and certainly increased the victim's risk of harm as the acts resulted in the victim's death. While [trial counsel] could have discussed the due process issue with petitioner, the Court finds that it was not ineffective assistance of counsel to fail to discuss a due process issue that the petitioner's statement does not support.

Trial counsel testified that he informed the Petitioner, prior to entry of his plea, of the elements of the offenses, sentencing ranges following a jury trial, release eligibility, and the possibility of consecutive sentencing. The record clearly reflects that trial counsel fully informed the Petitioner of the criteria to be analyzed in a consecutive determination, and the record supports the post-conviction court's findings in this regard. Just because trial counsel may not have used the "buzz words" the Petitioner desired, does not render his performance deficient.

The Petitioner also argues that trial counsel should have told him about the due process principles outlined in Dixon, including the likelihood that his robbery and kidnapping convictions would merge thereby resulting in less sentencing exposure. The post-conviction court found that the kidnapping in this case was "clearly beyond that needed to consummate the robbery." Trial counsel testified that he believed that separate convictions could stand based upon the facts of this case. He further stated that "from a practical standpoint with the offer it didn't matter" because "[e]verything was concurrent . . . ." We agree with the post-conviction court that trial counsel, under the facts presented in this case, was not deficient for failing to discuss this due process issue with the Petitioner. Trial counsel conveyed all of the necessary information to the Petitioner, allowing him to make an informed decision.

*C. Withdrawal of plea*

The Petitioner argues that "trial counsel abandoned [his] request to withdraw the plea." According to the Petitioner, "[i]t is inconceivable that, when the request to file [the Petitioner's] motion to withdraw the plea agreement was transmitted by [the Petitioner's] mother, [trial counsel] attempted to terminate the representation and abandon the duties he owed [the Petitioner]." He submits that both trial counsel and the post-conviction court erred by "summarily dismiss[ing] as inadequate the request [the Petitioner] made through his mother to withdraw the plea."

The post-conviction court determined that the Petitioner had failed to establish ineffective assistance in this regard. The court concluded as follows:

> Petitioner also claims that [trial counsel] was ineffective in the manner in which he withdrew from representing the petitioner after the plea and that ineffectiveness prejudiced the petitioner. The evidence shows that when [trial counsel] heard from petitioner's mother that petitioner wanted to withdraw his plea, [trial counsel] sent a letter to petitioner indicating to the petitioner that he could not represent petitioner on a motion to withdraw his guilt[y] plea and that petitioner would have to file any request to withdraw a plea within 30 days of the entry of the judgments and that he would have to secure new counsel or file a request pro se.
>
> The petitioner's post-conviction attorney argues that the proper course of action in this situation would have been for [trial counsel] to file the motion to withdraw the petitioner's plea and then for [trial counsel] to withdraw from his representation of the petitioner.
>
> The Court finds that petitioner has failed to prove by clear and convincing evidence that [trial counsel] was deficient in his representation of petitioner on this issue. The proof shows that petitioner never directly notified [trial counsel] that he wished to withdraw his plea. The record in this case reflects that while petitioner had previously written to [trial counsel], petitioner did not write [trial counsel] to say he wanted to withdraw his plea, he just talked to his mother about the possibility. The Court finds that absent any direct request by petitioner to [trial counsel] to withdraw his plea, [trial counsel] did not commit error in sending a letter to say that his representation was at an end and to advise petitioner of the time period and the proper procedure for withdrawing a guilty plea either pro se or with the assistance of a lawyer.
>
> Relief on petitioner's claim of ineffective assistance of counsel is denied.

The Petitioner argues that trial counsel was ineffective for failing to file a motion to withdraw his guilty plea, which, he asserts, his mother asked trial counsel to do. The post-conviction court found that there was no clear directive from the Petitioner to withdraw his plea. The State argues that, relying on the post-conviction court's findings of fact, the Petitioner never asked trial counsel to withdraw the guilty plea.

However, the post-conviction court's findings failed to take into account the fact that Petitioner's mother, whom trial counsel communicated frequently with and used to relay information back and forth between himself and the Petitioner, did indicate to trial counsel

-23-

that the Petitioner was having "second-thoughts" about his plea and felt pressured by trial counsel. Rather than follow up on that information, trial counsel then wrote a letter to the Petitioner's mother, not the Petitioner, specifically stating that he could not file a motion to withdraw on the Petitioner's behalf. This advice was incorrect, regardless of whether the Petitioner's issues were with trial counsel's assistance. As trial counsel himself testified at the post-conviction hearing, trial counsel's representation continued if the Petitioner stated a desire to attack his plea. Trial counsel owed a duty of representation to the Petitioner, including filing a motion to withdraw the plea if the Petitioner so chose, and failed in that duty.

However, the Petitioner must still show prejudice. See Arthur W. Stamey, III, v. State, No. E2005-02261-CCA-R3-PC, 2006 WL 1097450, at *4 (Tenn. Crim. App. Apr. 7, 2006) (Although petitioner demonstrated that his counsel did not timely file a motion to withdraw his guilty plea, petitioner failed to demonstrate prejudice). In this case, the Petitioner claims that he wanted to withdraw his plea after sentencing. Our Rules of Criminal Procedure provide, "After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). Therefore, only if the plea was tainted by "manifest injustice" would the trial court have set the judgment aside, had the Petitioner's motion been made.

In analyzing the meaning of "manifest injustice," this court wrote:

Rule 32(f) does not define "manifest injustice," however, courts have identified circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. Withdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear or fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered, and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008) (internal citations omitted). If a proper motion to withdraw had been made, the Petitioner contends that he would have argued that trial counsel, and the attendant circumstances, forced him to plead guilty. Finding those allegations to be meritless in the opinion herein, the Petitioner has failed to demonstrate any likelihood that a motion to withdraw his plea would have been granted, and the Petitioner has therefore failed to demonstrate any prejudice resulting from his lawyer's

failure to file same. See Perry Franks v. State, No. M2004-00554-CCA-R3-PC, 2005 WL 351260, at *3 (Tenn. Crim. App. Feb. 9, 2005) (petitioner failed to demonstrate any likelihood that a motion to withdraw his plea would have been granted and, therefore, failed to demonstrate any prejudice). This issue is without merit.

*D. Voluntary Nature of the Plea and the Petitioner's Mental Status*

On appeal, the Petitioner claims that trial counsel failed to evaluate his mental status, despite the fact that the written communications between trial counsel and the Petitioner reflect that the Petitioner "did not comprehend the severity of the charges he faced or the potential consequences of his actions."[3] The Petitioner continues, it "is most disturbing . . . that the record is entirely devoid of any discussion of [the Petitioner's] mental abilities, or that [trial counsel] had made any provision financial or otherwise for any such evaluation."

Finally, the Petitioner claims that his plea was not knowingly and voluntarily made. On appeal, he submits that, due to trial counsel's inadequate investigation of the case, insufficient preparation for trial, and poor communication, his plea was involuntarily entered. According to the Petitioner he "did not believe he had any other options at his disposal."

The post-conviction court determined that the Petitioner's plea was voluntarily made, ruling as follows:

> At the guilty plea on June 5, 2009, the Court accepted a plea agreement form signed by petitioner setting out his rights under Rule 11 of the Rules of Criminal Procedure. In addition, the Court advised the petitioner of his rights and asked questions of the petitioner, under oath, regarding petitioner's understanding of his rights. In accepting his plea, the Court implicitly found that the plea was knowingly and voluntarily made. While at the time of his plea, the petitioner testified that he understood his plea and was satisfied with his representation by [trial counsel], the petitioner now claims that, due to [trial] counsel's failure to properly advise petitioner on the issues of consecutive sentencing and due process/double jeopardy issues, petitioner did not have a full and proper understanding of his legal situation when he entered his plea.
>
> Since the Court has previously found that petitioner has failed to prove by clear and convincing evidence that [trial counsel] committed error in advising petitioner on consecutive/concurrent sentencing and on due

---

[3] Again, we note that this issue is presented somewhat differently than it was in the post-conviction court. Although developed during testimony at the hearing, the petition raised the issue in the context of the Petitioner's mental state at the time he made the statement.

process/double jeopardy issues, the Court also finds that petitioner has failed to carry his burden on this issue. Relief on this issue is denied.

The post-conviction court did not credit the testimony of the Petitioner at his post-conviction hearing, instead concluding that the Petitioner understood his plea agreement. There was no evidence to suggest that the Petitioner was incapable of understanding the parameters of his sentence agreement or his counsel's advice. The Petitioner only provided bare allegations of mental problems at the post-conviction hearing, and put on no proof of any mental problems other than his own testimony. At the guilty plea hearing, the Petitioner confirmed that he had obtained his GED, and trial counsel testified at the post-conviction hearing that the Petitioner's future plans included attending college or joining the military. He also described the Petitioner as "very bright, articulate" and "well spoken." Moreover, the Petitioner was familiar with criminal proceedings, having previously been involved in both juvenile and criminal proceedings.

Before the Petitioner pled guilty, the Petitioner confirmed that trial counsel reviewed with him the elements of the offenses, including the corresponding sentencing ranges for each offense. The Petitioner also confirmed his understanding of his out-of-range sentence, his minimal parole eligibility, and the potential of consecutive sentences if he proceeded to trial.

The guilty plea transcript reveals that the trial judge carefully reviewed the rights that the Petitioner was waiving and confirms that the Petitioner responded appropriately to questions. The Petitioner said that he was not under the influence of any substance at the plea hearing, and trial counsel testified that the Petitioner never appeared to be under the influence of alcohol or drugs. The Petitioner was also asked if he was being pressured to plead or offered anything in exchange for his plea, to which he answered no. Furthermore, the Petitioner stated that he was satisfied with trial counsel's representation. The trial court outlined the terms of the plea agreement, and the Petitioner acknowledged his signature on the agreement. The record reflects the Petitioner knew and understood the options available to him prior to the entry of his guilty plea, including the right not to plead guilty and continue with his jury trial, and he freely made an informed decision of the course that was most palatable to him at the time. Accordingly, we conclude that the post-conviction court did not err in finding that the Petitioner voluntarily, knowingly, and intelligently pled guilty and that counsel was not deficient.

## CONCLUSION

Based upon the foregoing, we conclude that the post-conviction court did not err by denying post-conviction relief. Accordingly, we affirm the judgment of the Sullivan County Criminal Court.

_____
D. KELLY THOMAS, JR., JUDGE